[No. 21469.   Department One.   August 8, 1929.]

THE STATE OF WASHINGTON, *Respondent,* v. MABEL
BALL, *Appellant.*[1]

*Gleeson & Gleeson,* for appellant.

*Chas. W. Greenough* and *Louis F. Bunge,* for re-
spondent.

[1]Reported in 279 Pac. 735.

MITCHELL, C. J.—Mabel Ball was prosecuted and convicted of the crimes of unlawful possession of narcotic drugs and the unlawful possession of narcotic drugs with intent to sell, and has appealed from a judgment on the verdict.

The first assignment is that the court erred in allowing a policeman who assisted in arresting the appellant, and also allowing another witness, to express their opinions that the appellant was under the influence of dope at the time she was arrested, and that she was an addict. The only argument under this assignment relates to the testimony of the policeman, and in our opinion is without substantial merit. The policeman, who had been acting as such for ten years, was asked if he observed the conduct of the appellant at the time of her arrest "as to whether she had been using morphine at that time." Counsel for the appellant objected on the ground that the policeman was not qualified to testify to her condition. The objection was sustained by the trial court, who stated that the officer might describe what he observed about her condition.

Thereupon the witness answered that she looked like she was under the effects of dope. The answer was in no way moved against as not being responsive, or as a conclusion of the witness, or for any other reason. Besides, it was immaterial and harmless, anyway. The appellant was charged with the unlawful possession of the drug, and it is not denied that a quantity was taken from her at the time of her arrest, and she was further charged with the unlawful possession of the drug with intent to sell it, and there was abundant evidence that she had been selling the drug about that time.

It is next complained that it was prejudicial to the rights of the appellant to permit an officer who assisted in making the arrest to testify that she offered

318

to plead guilty to only the unlawful possession of narcotic drugs. There is no claim, as we understand, indeed there could not be, that, assuming the truth of the testimony, her offer was anything other than voluntary. There was no error in admitting the testimony, it being in the nature of an admission.

The next argument is that the court erred in allowing the appellant to be cross-examined as to why she did not call, as a witness, the doctor who had sold the drugs to her. The record shows, however, that while a question to that effect was asked, appellant's objection to it was sustained and the question was not answered.

■ The next assignment of error, as argued, is that a witness, Mazie Martin, was allowed to testify that, on other occasions, she had bought narcotic drugs from appellant. The transactions were of recent occurrence compared with the date of the crime for which the appellant was being prosecuted. One of the counts in the information was possession of narcotic drugs with intent to sell. This testimony was admitted only to prove that intent, because, under specific instructions at the time the testimony was being given, the court told the jury it was not admitted as tending to prove other crimes, but "only for the purpose of the jury determining in this case the intent for which the defendant, if you find she had morphine, had it." It was proper for that purpose.

Error is assigned upon the denial of appellant's challenge to the sufficiency of the state's evidence to sustain a conviction. We need not detail the evidence even in substance, but content ourselves with the statement that there was substantial evidence to support each of the counts upon which conviction was had.

■ One of the principal questions on this appeal, and the one to which counsel have given most largely of their time and effort, arises upon instructions given

that were excepted to, and the refusal to give requested instructions, to which refusal exceptions were taken by the appellant. This question calls for an interpretation of the statute, or certain portions of it, as to whether it contemplates or permits a physician to furnish to a patient morphine for future use to be taken away from the presence of the physician by the patient, except upon a written prescription for the drug. The statute involved is chapter 47, Laws of 1923, p. 133; Rem. 1927 Sup. §§ 2509-1 to 2509-14. It is a comprehensive law, providing in considerable detail for the regulation, sale, disposal, possession and use of narcotic drugs, providing penalties for violation thereof, providing for the quarantine of narcotic drug addicts and the promulgation of rules and regulations governing the same. Portions of the act applicable to and controlling in the present case, found in § 3, are as follows:

"It shall be unlawful for any person to sell, furnish, or dispose of, or have in his possession with intent to sell, furnish, or dispose of any narcotic drug or drugs, except upon the written and signed prescription of a physician regularly licensed to practice medicine and surgery who has complied with the regulations of, and is duly registered under the laws of the state of Washington, and the laws of the congress of the United States. All such prescriptions shall be written with ink or indelible pencil, must be signed by the physician issuing the same; and must contain the name and address of the person for whom prescribed and the nature of the ailment, the date written, the office address and Federal registry number of the physician, all of which data must be placed on such prescriptions by the physician writing the same, or caused to be placed thereon before his or her signature is affixed thereto.

"All such prescriptions shall be filled but once, and the dispenser of such drugs in pursuance of such prescriptions shall cause the person procuring the drug or drugs to be prescribed to place his or her signature and address upon the back of such prescriptions, and shall keep all such prescriptions on a separate file and

preserve them for not less than two years from and after the date of the last prescription placed on such file, shall make duplicate copy of such prescription and preserve same, and such prescriptions shall at all times during business hours be available for inspection, and such duplicate copy shall be removed by any prosecuting attorney or peace officer, any representative of the department of licenses, or any deputy or inspector of the state department of agriculture.

"*Provided,* That nothing in this section shall be construed as prohibiting any wholesale dealer in drugs from selling or furnishing . . . ; nor prevent any physician, dentist, surgeon or veterinarian, so registered, from administering, for legitimate medical purposes, in the course of his professional practice only, to his patient, any of the articles enumerated in this section in quantities proportioned to the needs of such patient; . . .

"It shall be deemed a violation of this act for any person to have in his or her possession any narcotic drug, or any preparation or compound containing same in unexempt quantities, unless the same shall have been obtained pursuant to this act and to the laws of the congress of the United States and the rules and regulations now in force or hereafter promulgated thereunder, and proof of the possession of any such narcotic drug, except by a licensed physician, licensed manufacturer or licensed druggist, shall be *prima facie* evidence of an intent to unlawfully sell, furnish or dispose of the same."

The argument on behalf of the appellant is that the provision allowing a duly registered physician to "administer for legitimate medical purposes, etc.," allows him, if acting in good faith, to deliver to his patient narcotic drugs to be taken away and used in the future. Under the statute, clearly, there are only two ways for a patient to lawfully get possession of the drug, viz, to have it *administered* by the physician or *dispensed* to the patient by a druggist upon the prescription of a physician. The physician is not allowed to dispense,

nor can the druggist administer. The legislature seems to have used the words "administer" and "dispense" advisedly; the first in the sense that the article or drug shall be taken by the patient at once under the immediate direction and supervision of the physician, the other word in the sense that the article shall be delivered to the patient by the one filling the prescription to be taken away for future use. The statute says the prescription shall be filled but once, and the *dispenser* of such drugs in pursuance of such prescription shall cause the person procuring the drug or drugs to be prescribed, to place his or her name and address on the back of the prescription. Clearly, the one thus filling the prescription is the *dispenser* of the drug, because he furnishes it to be taken away for future use. This corresponds with the common understanding of the word dispense. But when the statute speaks of a physician using the drug for legitimate medical purposes in the course of his professional practice only, it does not use the word "dispense," but the word "administer" is employed. The physician, of course, can give what is needed for present use, while such as may be needed in the future, if any, must be provided by means of a prescription to be filled by one who dispenses the drug. This understanding of the statute is the view that was adopted by the trial court. The instructions given according to that view were proper. Those requested by the appellant, contrary to that view, and refused by the trial court, were improper, and properly refused.

The last assignment relates to the refusal to grant a new trial. It raises no question different from those already discussed.

Affirmed.

FULLERTON, HOLCOMB, and BEALS, JJ., concur.

TOLMAN, J. (dissenting)—I heartily agree with the majority that, under the statute law, as quoted, a physician may not dispense, but may only administer, narcotic drugs. I find great difficulty, however, in following the trial court and the majority in their definition of the verb "administer." The trial court instructed:

"You are further instructed that the law does not contemplate nor permit the furnishing by a physician to a patient of morphine to be taken by the patient out of the presence of the physician except upon a written prescription, such prescription to be filled by a pharmacist and kept on record as the law provides. If you find in this case beyond a reasonable doubt that the defendant had in her possession at the time alleged in the information a narcotic drug, to wit, morphine, and that it was not obtained by her upon a prescription regularly made out as the law requires, then the defendant would have been unlawfully in the possession of such morphine and have acquired the same unlawfully;"

and the majority apparently approve that instruction.

We are now construing a statute which creates a crime, and should be careful not to make criminal anything not clearly embraced within the statutory prohibition. It seems to me not inconceivable that, under many circumstances, not difficult to imagine as possible of occurrence, a physician might in good faith deem it necessary for the welfare of the patient to leave with the patient, with a nurse, or with some attendant, a dose or doses of some narcotic drug to be taken by the patient when the physician was necessarily absent, and, if so taken according to the physician's directions, the drug would be as truly administered by the physician as though given by his own hands. Because the instruction precludes the right to so administer, in my opinion, it is erroneous.

I therefore dissent.